### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| PRAVIN KHEDKAR, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 20-1510 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 15, 17 |
| | : | | |
| U.S. CITIZENSHIP AND | : | | |
| IMMIGRATION SERVICES, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

### MEMORANDUM OPINION

GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

Courts ordinarily presume that Congress and government agencies act in concert to construct and maintain a cohesive body of laws. *See, e.g.*, *Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990) ("We assume that Congress is aware of existing law when it passes legislation."); *Consumers Union of U.S., Inc. v. Kissinger*, 506 F.2d 136, 145 (D.C. Cir. 1974) (Danaher, J., concurring) ("It is not to be doubted that importantly placed officials in our Executive departments were fully aware of our tariff laws and regulations and of the legislative restrictions upon Presidential action."). But that is not always true. Sometimes, perhaps even for understandable reasons, agencies do not update their regulations to keep up with statutory changes. The conflict leaves ordinary people in a confusing predicament.

Plaintiff Pravin Khedkar found himself in just such a situation. After immigrating to the United States, he took advantage of a statute that allowed him to leave the employer that sponsored his visa and work elsewhere. Yet regulations that predated the statute required the

federal government to continue to send immigration correspondence to Khedkar's original employer.  When the original employer did not respond to a request for evidence, the government denied a petition that would have made Khekdar eligible for permanent residency. Khedkar claims the government acted improperly.

The Court agrees.  Following the regulations was incompatible with the statutory scheme that allowed Khedkar to change employers, so the government's petition denial must be set aside.  The government should have treated Khedkar as a party to the petition adjudication proceedings and sent him any related correspondence.

## II.  BACKGROUND

### A.  Legal Framework

Noncitizens cannot work in the United States without authorization from U.S. Citizenship and Immigration Services ("USCIS").  The Immigration and Nationality Act ("INA") gives preference in obtaining permanent work authorization to, among others, immigrants employed as managers or executives at multinational businesses.  *See* 8 U.S.C. § 1153(b)(1)(C).  For an immigrant manager or executive to receive that preferential treatment, his employer must submit to USCIS an I-140 Petition for Alien Worker demonstrating that he qualifies for it.  *See id.* § 1154(a)(1)(F); 8 C.F.R. § 204.5(j).  The immigrant is called the petition's "beneficiary."  *See* 8 C.F.R. § 204.5(a).

An immigrant who is the beneficiary of an approved I-140 petition can apply to become a lawful permanent resident.  *See* 8 U.S.C. § 1255(a).  He makes that request by filing an I-485 Application to Register Permanent Residence or Adjust Status.  *See* 8 C.F.R. § 245.2(a)(3)(ii); *see also Vemuri v. Napolitano*, 845 F. Supp. 2d 125, 127 (D.D.C. 2012).  Even though an approved I-140 petition is required to obtain permanent residency through the I-485 process, an

immigrant can sometimes file his I-485 application at the same time his employer files the I-140 petition. *See* 8 C.F.R. § 245.2(a)(2)(i).

To give immigrants flexibility to change jobs when there are delays in processing I-485 applications, Congress enacted what is called the "portability provision." *See Ravulapalli v. Napolitano*, 773 F. Supp. 2d 41, 45 (D.D.C. 2011). The portability provision states that an I-140 petition "shall remain valid" to support an immigrant's I-485 application for permanent residency even when the immigrant changes jobs if (1) the immigrant's I-485 application has been pending for 180 days or more and (2) the new job is "in the same or a similar occupational classification" as the one for which the immigrant's original employer filed the petition. 8 U.S.C. § 1154(j). It is meant to allow an immigrant to move—or "port"—to a new employer without fear that USCIS will deny his I-485 application based on the lack of an approved I-140 petition from the new employer. *See Ravulapalli*, 773 F. Supp. 2d at 45.

### B.  Background of the Case

Khedkar came to the United States to work as a manager at Deloitte Consulting LLP. J.A. 129–30, 333. The next year, Deloitte filed an I-140 petition so Khedkar could work in the United States permanently. *See* Defs.' Statement Material Facts Not in Genuine Dispute ("Defs.' SMF") ¶ 1, ECF No. 16-2; *see also* J.A. 332–36, 660. The petition asserted that Khedkar was entitled to preference because he was a multinational executive or manager. JA. 332, 660. Khedkar filed an I-485 application at the same time. J.A. 24, 236–53.

Nine months later, Khedkar informed USCIS that he was going to start a job with Alpha Net Consulting LLC. J.A. 653–59. He invoked the portability provision to retain the I-140 petition Deloitte filed on his behalf as the basis for his I-485 application. J.A. 653. The petition was still pending. Defs.' SMF ¶ 4.

A week after that, USCIS sent a request for evidence to Deloitte.  J.A. 208–17.  The request stated that Deloitte's I-140 petition needed more details about the duties Khedkar would perform to justify classifying him as an executive or manager.  J.A. 209.  Those details included "[a]n explanation of the specific daily tasks that are involved with the completion of each of the beneficiary's proposed duties."  *Id.* (emphasis omitted).  The request also demanded more information from Deloitte to establish that Khedkar had performed executive or managerial duties for at least one year in the three-year period prior to the petition's filing—a statutory requirement.  J.A. 210–11; *see also* 8 U.S.C. § 1153(b)(1)(C).

Two-and-a-half months later, Khedkar notified USCIS that he was changing jobs once more.  J.A. 671–77.  He had accepted a position with IBM Corporation.  J.A. 673.  Khedkar again invoked the portability provision so that he could continue to rest his I-485 application on Deloitte's I-140 petition.  J.A. 671.

The following month, USCIS denied the I-140 petition.  J.A. 200.  Its decision letter explained that Deloitte never responded to its request for evidence.  J.A. 202.  Khedkar protested by filing a motion to reopen the decision.  J.A. 111–16.  USCIS dismissed his motion.  J.A. 35–36, 107–10.  It said that regulations prevented an I-140 petition beneficiary like Khedkar from challenging agency decisions regarding the petition.  J.A. 109.  Khedkar appealed, J.A. 2–21, but USCIS summarily denied his appeal on the same grounds as his motion to reopen, J.A. 1.

Khedkar then brought this suit against USCIS.  *See* Compl., ECF No. 1.[1]  He asserts three claims under the Administrative Procedure Act.  First, Khedkar alleges that USCIS unlawfully denied the I-140 petition by following regulations that excluded him from the adjudicative and

---

[1] Khedkar's complaint also names two USCIS officers as defendants.  *See* Compl. ¶¶ 21–22.  Because Khedkar sues the officers in their official capacities, this opinion will refer to the defendants collectively as "USCIS."

appeal processes.  *Id.* ¶¶ 74–92.  Second, Khedkar asserts that USCIS improperly delayed

processing the notices he sent the agency to notify it of his job moves.  *Id.* ¶¶ 93–109.  Third,

Khedkar alleges that USCIS violated his procedural due process rights.  *Id.* ¶¶ 111–15.  Khedkar

bases his first two claims in the INA, USCIS regulations, and agency precedent decisions.  *Id.*

¶¶ 92, 109.  He grounds his third claim in the Fifth Amendment.  *Id.* ¶¶ 111–15.

Before the Court now are cross-motions for summary judgment on all Khedkar's claims.

*See* Mem. P & A Supp. Pl.'s Mot. Summ. J. ("Pl.'s Mot."), ECF No. 15-1; Mem. P & A Opp'n

Pl.'s Mot. and Supp. Defs.' Cross-Mot. Summ. J. ("Defs.' Mot."), ECF No. 17-1; *see also* Pl.'s

Reply Defs.' Opp'n Pl.'s Mot. Summ. J. and Mem. Opp'n Defs.' Cross-Mot. Summ. J. ("Pl.'s

Reply"), ECF No. 18; Reply Supp. Defs.' Cross-Mot. Summ. J. ("Defs.' Reply"), ECF No. 20.

## III.  LEGAL STANDARD

A court's evaluation of a summary judgment motion looks different than usual when it

reviews an agency action under the Administrative Procedure Act ("APA").  *See Rempfer v.

Sharfstein*, 583 F.3d 860, 865 (D.C. Cir. 2009).  In an APA suit, the court's review is largely

limited to the contents of the administrative record.  *See id.*; *see also CTS Corp. v. EPA*, 759 F.3d

52, 64 (D.C. Cir. 2014).  The court thus "sits as an appellate tribunal" to determine whether, as a

matter of law, the record supports the agency's decision.  *See Am. Bioscience, Inc. v. Thompson*,

269 F.3d 1077, 1083–84 (D.C. Cir. 2001); *see also Roberts v. United States*, 883 F. Supp. 2d 56,

62 (D.D.C. 2012), *aff'd*, 741 F.3d 152 (D.C. Cir. 2014).  Summary judgment simply "serves as

the mechanism" for deciding that question.  *Citizens for Resp. & Ethics in Wash. v. U.S. SEC*,

916 F. Supp. 2d 141, 145 (D.D.C. 2013).

The APA requires a court to set aside agency action that is "arbitrary, capricious, an

abuse of discretion or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  Judicial

review for arbitrariness is "narrow." *Judulang v. Holder*, 565 U.S. 42, 52–53 (2011) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). An agency action is "arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, or offered an explanation for its decision that runs counter to the evidence before the agency." *Animal Legal Def. Fund, Inc. v. Perdue*, 872 F.3d 602, 611 (D.C. Cir. 2017) (brackets omitted) (quoting *State Farm*, 463 U.S. at 43). By the same token, a "court will ordinarily uphold an agency's decision so long as the agency 'examined the relevant data and articulated a satisfactory explanation for its action, including a rational connection between the facts found and the choice made.'" *Id.* (brackets omitted) (quoting *State Farm*, 463 U.S. at 43). Ultimately, however, an agency policy or "regulation which . . . operates to create a rule out of harmony with the statute[] is a mere nullity." *See Manhattan Gen. Equip. Co. v. Comm'r of Internal Revenue*, 297 U.S. 129, 134 (1936); *see also Orion Rsrvs. Ltd. P'ship v. Salazar*, 553 F.3d 697, 703 (D.C. Cir. 2009) ("[A] regulation contrary to a statute is void.").

## IV.  ANALYSIS

Khedkar brings three attacks against USCIS. He alleges: (1) that USCIS improperly denied the I-140 petition by refusing to send him the request for evidence and let him appeal the denial; (2) that USCIS unlawfully delayed processing the notices that he sent the agency regarding his job moves; and (3) that USCIS's actions violated his constitutional due process rights. The first claim has merit. Khedkar has forfeited the second and third ones because he failed to brief them in a timely and well-supported manner.

### A.  Khedkar's Improper Adjudication Claim

Khedkar's first claim is that USCIS acted unlawfully by sending Deloitte the request for evidence and then denying the I-140 petition when it received no response.  Compl. ¶¶ 78–86; *see generally* Pl.'s Mot. at 18–28.  He also faults the agency for rejecting his attempts to appeal the denial.  Compl. ¶¶ 87–88; *see also* Pl.'s Mot. at 22–23, 26.

As it turns out, USCIS's failure to provide Khedkar the request for evidence and its refusal to entertain his appeal both stem from regulations that do not recognize I-140 petition beneficiaries as parties to I-140 petition proceedings.  The regulation governing how USCIS should adjudicate benefit requests like I-140 petitions says straightforwardly: "A beneficiary of a petition is not a recognized party in [a benefit request] proceeding."  8 C.F.R. § 103.2(a)(3).  Beneficiaries thus "do not receive notice relating to the [petition's] adjudication."  *Matter of V-S-G- Inc.*, Adopted Decision 2017-06, 2017 WL 5625783, at *4 (AAO Nov. 11, 2017).  Similarly, the regulation on administrative appeals within the agency provides that only an "affected party" can appeal the denial of an application or petition.  *See* 8 C.F.R. § 103.3(a)(2)(i).  It then defines "affected party" as "the person or entity with legal standing in a proceeding" and specifically excludes from that definition "the beneficiary of a visa petition."  *Id.* § 103.3(a)(1)(iii)(B).

Khedkar asserts that USCIS should have treated him as a party to the I-140 petition adjudication who was entitled to receive the agency's request for evidence and to appeal the petition's denial.  *See generally* Pl.'s Mot. at 18–28.  The agency focuses on the substance of the petition.  It argues that the petition lacked sufficient evidence when filed to show that Khedkar was an executive or manager and thus deserved to be denied.  *See* Defs.' Mot. at 9–12; Defs.' Reply at 2–7.  Because Khedkar raises the antecedent concern, the Court will address his argument first—after all, if Khedkar was entitled to receive the request for evidence, then

USCIS's adjudication of the petition was premature.  And because the Court agrees with

Khedkar, it will stop its analysis there.  USCIS must give him an opportunity to respond to its

request for evidence and then reevaluate its denial.

Before getting to the merits of Khedkar's claim, however, the Court must address some

questions around standing.

### 1.  Constitutional Standing and Khedkar's Right to Sue

USCIS confusingly describes regulations denying that an I-140 petition beneficiary is a

party to a petition adjudication proceeding as characterizing the beneficiary's "standing."  *See,*

*e.g.*, 8 C.F.R. § 103.3(a)(1)(iii)(B) (explaining that an "affected party" for administrative appeals

purposes is "the person or entity with *legal standing* in a proceeding" (emphasis added)); *Matter*

*of V-S-G- Inc.*, 2017 WL 5625783, at *8 (describing regulations as delineating a beneficiary's

"administrative standing").  This label has misled courts.  Some have interpreted the regulations

as not only prohibiting I-140 beneficiaries from filing internal agency appeals, but also (for less-

than-clear reasons) shutting beneficiaries out of the courthouse.  *See, e.g.*, *Ibraimi v. Chertoff*,

No. 07-cv-3644, 2008 WL 3821678, at *3 (D.N.J. Aug. 12, 2008); *Blacher v. Ridge*, 436 F.

Supp. 2d 602, 606 n.3 (S.D.N.Y. 2006); *see also George v. Napolitano*, 693 F. Supp. 2d 125, 130

(D.D.C. 2010) (citing *Ibraimi* and *Blacher* when concluding that a beneficiary "lack[ed] standing

to challenge any action by USCIS regarding [his] I-140 Petition").  Whatever effect USCIS

regulations have on an I-140 beneficiary's ability to navigate agency proceedings, they do not

affect the beneficiary's access to federal court.  *See Mantena v. Johnson*, 809 F.3d 721, 732 (2d

Cir. 2015) ("[T]he fact that [an I-140 beneficiary] may not have satisfied USCIS's definition of

'legal standing' before the agency does not mean she does not have standing to bring this lawsuit

in *federal court*."); *Kurapati v. U.S. Bureau of Citizenship & Immigr. Servs.*, 775 F.3d 1255,

1260 (11th Cir. 2014) ("[T]he regulatory definition of 'affected party' does not preclude the beneficiary from having standing in the district court, as it relates to who has the ability to challenge the administrative denial of a petition."); *see also De Jesus Ramirez v. Reich*, 156 F.3d 1273, 1276 (D.C. Cir. 1998) ("[U]nder the Administrative Procedure Act, it is only statutes, not agency regulations, that can preclude otherwise available judicial review.").

As far as constitutional standing is concerned, what matters is that the plaintiff show: (1) that he has suffered an injury in fact; (2) that the injury is fairly traceable to the defendant's challenged conduct; and (3) that a favorable decision would likely redress the injury. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). Khedkar did that. By Khedkar's account, USCIS erroneously failed to send him the request for evidence and then denied the I-140 petition filed on his behalf because no one provided the information that it asked for. The agency's misaddressing of the request "foreclosed any opportunity for [Khedkar] to be notified and to provide evidence to USCIS" in support of the petition. *See Mantena*, 809 F.3d at 731. He now lacks the chance at securing permanent residency as a result. And even if USCIS might ultimately deny the petition (or his application for permanent residency) anyway, "lost opportunity is itself a concrete injury—and a favorable decision would redress it." *See id.* (quoting *Patel v. U.S. Citizenship & Immigr. Servs.*, 732 F.3d 633, 638 (6th Cir. 2013)); *see also Shalom Pentecostal Church v. Acting Sec'y U.S. Dep't of Homeland Sec.*, 783 F.3d 156, 161–62 (3d Cir. 2015); *Patel*, 732 F.3d at 638.

Constitutional access to the judiciary aside, other courts have determined that I-140 beneficiaries lack "prudential standing" to challenge denials of petitions filed on their behalf. They say that beneficiaries fall outside the zone of interests that the INA's scheme for awarding employment-based visas protects. *See, e.g.*, *Pai v. U.S. Citizenship & Immigr. Servs.*, 810 F.

Supp. 2d 102, 108–12 (D.D.C. 2011); *Vemuri*, 845 F. Supp. 2d at 130–34.  Those courts point to two statutory limitations—and the legislative history behind them—as defining the relevant zone of interests.  *See Pai*, 810 F. Supp. 2d at 110–11; *Vemuri*, 845 F. Supp. 2d at 131–32.  One statutory limitation caps the number of employment-based visas available each year and allocates them among the different kinds of immigrants who qualify for such visas.  *See* 8 U.S.C. §§ 1151(d), 1153(b).  The other requires certain I-140 petitioners (not those seeking visas for multinational executives and managers like Khedkar) to obtain a certification from the Secretary of Labor that hiring a noncitizen will not adversely affect the American workforce.  *See id.* §§ 1153(b)(3)(C), 1182(a)(5)(A).  Reasoning that the limitations reflect a congressional intent to protect American workers' interests over foreign workers' interests, these courts have concluded that suits by beneficiaries challenging I-140 petition denials have no place in federal court.  *See Pai*, 810 F. Supp. 2d at 110–11; *Vemuri*, 845 F. Supp. 2d at 131–32.

This Court disagrees.  Despite older cases referring to the zone of interests test as providing the standard for "prudential standing," the Supreme Court has clarified that the test is better understood as defining the scope of a statutory provision's cause of action.  *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126–27 (2014).  A plaintiff can bring suit if the interest he asserts is "'arguably within the zone of interests to be protected or regulated by the statute' that he says was violated."  *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 224 (2012) (quoting *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153 (1970)).  And when it comes to an APA suit alleging that an agency violated a statute, "the test is not especially demanding."  *Lexmark*, 572 U.S. at 130 (internal quotation marks omitted) (quoting *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians*, 567 U.S. at 225).  It "forecloses suit only when a plaintiff's interests are so marginally

related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress authorized that plaintiff to sue." *Id.* (internal quotation marks omitted) (quoting *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians*, 567 U.S. at 225).

Khedkar clears that low bar. The INA grants visas not to the multinational employers who file I-140 petitions on behalf of their executives and managers but to the beneficiaries themselves. *See* 8 U.S.C. § 1153(b)(1) (providing that "[v]isas shall . . . be made available . . . to qualified immigrants," including multinational executives and managers). Indeed, an approved I-140 petition makes the beneficiary eligible for a permanent visa, not merely a temporary one that expires when the employer no longer needs the beneficiary's services. *See id.* § 1255(a). And as if those two provisions do not already encompass Khedkar's suit, the portability provision he invoked leaves no doubt. Congress passed the portability provision to give I-140 beneficiaries the flexibility to change jobs without risking their shot at permanent residency. *See id.* § 1154(j) (listing the provision's title as "Job flexibility for long delayed applicants for adjustment of status to permanent residence"); *Matter of V-S-G- Inc.*, 2017 WL 5625783, at *3 (explaining that the provision addressed the problem of beneficiaries getting stuck working for the employers who submitted I-140 petitions on their behalf until they could secure permanent residency). Even USCIS recognizes that a beneficiary who "is eligible to and has properly requested to port" falls within the portability provision's zone of interests. *See Matter of V-S-G- Inc.*, 2017 WL 5625783, at *9. So contrary to some courts suggesting otherwise, there is "no basis in the text of the [INA]—none—to conclude that Congress was completely indifferent to the interests of the 'qualified immigrants' themselves." *Patel*, 732 F.3d at 636 (emphatically rejecting the argument that only U.S. employers and workers fall within the statute's zone of

interests).[2]  The INA thus authorizes Khedkar's attempt to ensure that USCIS properly adjudicates the I-140 petition filed on his behalf.  *See id.* (holding that the INA permitted the would-be beneficiary of an I-140 petition to challenge the petition's denial); *cf. Shalom Pentecostal Church*, 783 F.3d at 164 ("The text of the INA leaves no doubt that the interests of employment-based visa petition applicants . . . are directly related to the purposes of the INA.").[3]

2.  Treating I-140 Petition Beneficiaries as Parties in Petition Adjudication Proceedings

The Court now turns to the merits of Khedkar's claim: Did USCIS act improperly by not treating him as a party to the I-140 petition adjudication and, consequently, not sending him the

---

[2] Notably, the *Pai* and *Vemuri* cases predated two recent decisions in which the Supreme Court emphasized that the zone of interest test was both not jurisdictional and undemanding.  *See Lexmark*, 572 U.S. at 127, 130; *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians*, 567 U.S. at 225.  USCIS even cited one of those decisions as a reason for revisiting its position that I-140 petition beneficiaries not be treated as parties to petition adjudication proceedings.  *See Mantena*, 809 F.3d at 722 (quoting USCIS "Request for Amicus Brief . . . seek[ing] briefing, 'in light of *Lexmark*,' 'on whether the beneficiaries of certain immigrant visa petitions have standing to participate in the administrative adjudication process, including standing to appeal'").

[3] A related question often litigated in immigration cases—but not mentioned by either party here—is whether the INA strips a court of jurisdiction to hear them.  The question arises out of a provision barring courts from reviewing decisions in USCIS's discretion.  *See* 8 U.S.C. § 1252(a)(2)(B)(ii); *see also iTech U.S., Inc. v. Renaud*, --- F.4th ----, 2021 WL 3043302, at *7–8 (D.C. Cir. July 20, 2021) (holding that the decision to revoke an approved I-140 petition is a discretionary one that courts cannot review).  That provision does not apply in this case.  The decision to grant or deny an I-140 petition is not a discretionary one.  *See* 8 U.S.C. § 1154(b) ("[T]he Attorney General *shall*, if he determines that the facts stated in the petition are true and that the alien in behalf of whom the petition is made . . . is eligible for preference under [8 U.S.C. § 1153(b)], approve the petition . . . ." (emphasis added)); *see also Las Americas Immigrant Advoc. Ctr. v. Wolf*, 507 F. Supp. 3d 1, 11 n.4 (D.D.C. 2020) (explaining that "Congress primarily transferred the INA enforcement functions" from the Attorney General to the Secretary of Homeland Security, USCIS's parent agency); *cf. Etbeleh v. Chertoff*, No. Civ. A. H-06-0023, 2006 WL 2331052, at *3 (S.D. Tex. Aug. 8, 2006) (distinguishing between the nondiscretionary decision to approve an I-130 petition under section 1154(b) and the discretionary decision to revoke such a petition).  Besides, Khedkar's claims focus on the procedure USCIS used in adjudicating his petition, not the substantive decisions the jurisdiction-stripping provision is concerned with.  *See Mantena*, 809 F.3d at 728–30; *Musunuru*, 831 F.3d at 887–88.

request for evidence or letting him appeal?  To answer that question, fully understanding USCIS's regulatory framework is key.

An I-140 petition for a multinational executive or manager must include a statement from the petitioning employer demonstrating that the beneficiary has worked for the employer in a managerial or executive capacity for at least one of the preceding three years and will continue to do so in the United States.  8 C.F.R. § 204.5(j)(3)(i), (5); *see also* 8 U.S.C. § 1153(b)(1)(C).  If the statement does not contain enough information to make that showing, USCIS has two options.  It can either deny the petition "for lack of initial evidence" or "request that the missing initial evidence be submitted."  8 C.F.R. §103.2(b)(8)(ii).  If it chooses the latter option, a regulation provides that requests for evidence "will be communicated by regular or electronic mail and will specify the type of evidence required . . . sufficient to give the applicant or petitioner adequate notice and sufficient information to respond."  *Id.* § 103.2(b)(8)(iv).  Because USCIS regulations do not recognize I-140 beneficiaries as parties to petition proceedings, *id.* § 103.2(a)(3), the agency sends requests for evidence only to the petitioning employer.  *See Matter of V-S-G- Inc.*, 2017 WL 5625783, at *4; *see also* 8 C.F.R. § 103.3(a)(1)(iii)(B), (a)(2)(i) (permitting only an "affected party," which is defined to exclude "the beneficiary of a visa petition," to file administrative appeals); *id.* § 103.8(a)(1)(i) (explaining that "routine service" of "notices, decisions, and other papers . . . in administrative proceedings" entails "mailing the notice . . . to the affected party").

The portability provision complicates this process.  Recall that the provision allows an immigrant whose I-485 application for permanent residency has been pending for at least 180 days to change to a similar job without losing the I-140 petition that forms the basis of his application.  8 U.S.C. § 1154(j).  The immigrant requesting to port to a new job must file a Form

I-485 Supplement J, which provides USCIS with information about the new job so the agency can determine if it is similar to the old one.  *See* 8 C.F.R. § 245.25(a); *see also* Dep't of Homeland Sec., U.S. Citizenship and Immigr. Servs., Instructions for Supplement J, Confirmation of Bona Fide Job Offer or Request for Job Portability Under INA Section 204(j) ("Supplement J Instructions") 1 (2021); 8 C.F.R. § 103.2(a)(1) (explaining that the instructions for "[e]very form, benefit request, or other document" are "incorporated into the regulations requiring its submission").  Because the portability provision "preserves the validity of only those I-140 petitions that have been approved," USCIS cannot approve the request unless the immigrant is the beneficiary of an approved I-140 petition.  *Ravulapalli*, 773 F. Supp. 2d at 53; *see also Matter of Al Wazzan*, 25 I. & N. Dec. 359, 367 (AAO 2010).

But an immigrant can request to port even if USCIS has not yet adjudicated the I-140 petition underlying his I-485 application.  *See* 8 C.F.R. § 245.25(a)(2)(ii)(B); Supplement J Instructions 2.  The agency will simply resolve the I-140 petition before addressing the related portability request.  Supplement J Instructions 2; Retention of EB-1, EB-2, and EB-3 Immigrant Workers and Program Improvements Affecting High-Skilled Nonimmigrant Workers ("Employment-Based Immigrant Rule"), 81 Fed. Reg. 82,398, 82,418 (2016) ("In the final rule at 8 CFR 245.25(a)(2)(ii)(A) and (B), DHS reaffirms that a qualifying immigrant visa petition has to be approved before DHS examines a portability request under INA 204(j) and determines an individual's eligibility or continued eligibility to adjust status based on the underlying visa petition.").  Of course, just because an immigrant's I-485 application has been pending for more than 180 days does not automatically render the underlying I-140 petition valid.  *See Matter of Al Wazzan*, 25 I. & N. Dec. at 364–67.

Instead, USCIS will approve the I-140 petition "if it was eligible for approval at the time of filing and until the alien's adjustment of status application has been pending for 180 days." 8 C.F.R. § 245.25(a)(2)(ii)(B)(2). That regulatory wording means that the agency "will review the pending petition to determine whether . . . the petition is approvable or would have been approvable had it been adjudicated before the associated application for adjustment of status has been pending for 180 days or more." Employment-Based Immigrant Rule, 81 Fed. Reg. at 82,420. Its purpose is to allow USCIS to approve a petition if something happens after an I-485 application has been pending for at least 180 days that would ordinarily make the petition invalid—for instance, the petitioning employer withdrawing the petition or going out of business. *Id.* at 82,420–21. The wording does not mean that the agency cannot request additional evidence to adjudicate the petition, as it did in this case. *See id.* at 82,421 (remarking that the review process for I-140 petitions that were pending when a beneficiary requests to port "does not prevent [the agency] from requiring a response from the Form I-140 petitioner and taking appropriate action on a request for evidence"); *see also* Defs.' Reply at 6 (acknowledging that the petition's evidentiary deficiencies "may have been curable if Deloitte . . . had responded to the [request for evidence]").[4]

---

[4] The rule setting out USCIS's review of I-140 petitions that are pending when an immigrant requests to port to a new employer codified existing "policy and practice." *See* Employment-Based Immigrant Rule, 81 Fed. Reg. at 82,420 & n.31. A 2005 agency memo detailing that policy and practice in question-and-answer format explained:

**Question 1. How should service centers or district offices process <u>unapproved</u> I-140 petitions that were concurrently filed with I-485 applications that have been pending 180 days in relation to the I-140 portability provisions . . . ?**

**Answer**: If it is discovered that a beneficiary has ported off of an unapproved I-140 and I-485 that has been pending for 180 days or more, the following procedures should be applied:

The parties focus their arguments for summary judgment on two different parts of that regulatory process. USCIS concentrates on the ultimate question of whether it was justified in denying the I-140 petition that named Khedkar as a beneficiary. Naturally, it says it was. The agency points out that regulations require it to approve an I-140 petition that is pending when the beneficiary requests to port only "if [the petition] was eligible for approval at the time of filing." 8 C.F.R. § 245.25(a)(2)(ii)(B)(2). According to USCIS, the petition did not establish—at the time of filing—that Khedkar was and would continue to be a manager or executive for Deloitte. Defs.' Mot. at 10–12; Defs.' Reply at 6–7. That is why it sent the request for evidence. *See* Defs.' Mot. at 11–12; Defs.' Reply at 6. As a result, the agency asserts, denying the petition was appropriate. Defs.' Mot. at 11–12; Defs.' Reply at 6.

Khedkar belatedly debates that point in his reply brief, *see* Pl.'s Reply at 13–18, but the real thrust of his argument goes to an antecedent question. *See Walker v. Pharm. Rsch. & Mfrs. of Am.*, 461 F. Supp. 2d 52, 58 n.9 (D.D.C. 2006) (explaining that a plaintiff forfeits arguments raised for the first time in her reply brief). Namely, Khedkar maintains that USCIS should have

---

A. Review the pending I-140 petition to determine if the preponderance of the evidence establishes that the case is approvable or would have been approvable had it been adjudicated within 180 days. If the petition is approvable but for an ability to pay issue or any other issue relating to a time after the filing of the petition, approve the petition on its merits. Then adjudicate the adjustment of status application to determine if the new position is the same or similar occupational classification for I-140 portability purposes.

B. If a request for additional evidence (RFE) is necessary to resolve a material issue, other than post-filing issues such as ability to pay, an RFE can be issued to try to resolve the issue. When a response is received, and if the petition is approvable, follow the procedures in part A above.

Defs.' Reply, Ex. C at 3, ECF No. 20-3 (revising an earlier policy found at Defs.' Reply, Ex. B, ECF No. 20-2); *see also* Defs.' Reply at 2 n.3 (acknowledging that the policy remains operative and is "being incorporated into USCIS's Policy Manual").

sent him—not Deloitte—the request for evidence.  *See* Pl.'s Mot. at 18–28; Pl.'s Reply at 8–13.

In view of the portability provision's aim to promote job flexibility for employment-based

immigrants, he says, it made no sense for the agency to send the request to the employer he was

leaving.  *See* Pl.'s Mot. at 23–28.  Yet the regulations refusing to recognize I-140 petition

beneficiaries as parties in USCIS proceedings prevented him from receiving the request (and

later prevented him from appealing the decision).[5]  Those regulations therefore conflict with the

portability provision, Khedkar argues, and should not apply to beneficiaries who request to port

to a new employer.  *See id.*

If Khedkar is right, then he will have an opportunity to submit supplemental evidence to

USCIS and the agency will have to reassess his I-140 petition.  The Court thus begins its analysis

with his argument.  It is important to note at the outset, however, that the Court will not evaluate

whether (as Khedkar suggests) USCIS must always send requests for evidence to I-140

beneficiaries who have requested to port.  *See* Pl.'s Reply at 17–18.  Regulations do not require

the agency to send a request for evidence whenever a petition lacks sufficient evidence; it also

has the option to deny such deficient petitions outright.  *See* 8 C.F.R. § 103.2(b)(8)(ii); *see also*

*Calle v. Whitaker*, No. 18-cv-1957, 2019 WL 447324, at *13 (E.D.N.Y. Jan. 31, 2019).[6]  On the

---

[5] At one point, Khedkar claims that USCIS inadequately justified its decisions to deny his appeal and motion to reopen.  *See* Pl.'s Mot. at 22–23.  But the agency explained in each instance that Khedkar was not an "affected party" allowed to appeal.  *See* J.A. 1, 35–36, 107–10.  It provided enough reasoning to "discern[]" its decisionmaking "path."  *See Pub. Citizen, Inc. v. FAA*, 988 F.2d 186, 197 (D.C. Cir. 1993) (citation omitted).

[6] Khedkar's contrary view rests on a regulation that requires USCIS to notify a petitioner or applicant when the agency will make an adverse decision "based on derogatory information . . . of which the applicant or petitioner is unaware."  *See* 8 C.F.R. § 103.2(b)(16)(i); *see also* Pl.'s Reply at 17–18.  But there was no hidden information that doomed the I-140 petition at issue here.  *Contrast Zemeka v. Holder*, 989 F. Supp. 2d 122, 130 (D.D.C. 2013) (explaining that USCIS, when adjudicating petitions for permanent residency based on marriage, must notify petitioners if it discovers evidence of marriage fraud and give them an opportunity to

request for evidence issue, the Court will decide solely to whom USCIS should send such a request after receiving notice that a beneficiary wants to port *assuming* the agency decides to send one.[7]  It will also decide whether the agency, if notified that a beneficiary would like to port, can properly allow only the petitioner to appeal an unfavorable decision.

The question of how an I-140 beneficiary's decision to port affects whom USCIS should consider to be a party in petition adjudication proceedings is a matter of first impression.  But the Court is not writing on a completely blank slate.  Two courts of appeals recently addressed a similar question in the context of I-140 petition revocations.  Both cases considered USCIS's notice obligations when the agency sought to revoke already-approved I-140 petitions after the beneficiaries of those petitions had ported to new employers.  *See Mantena*, 809 F.3d at 733–36; *Musunuru v. Lynch*, 831 F.3d 880, 888–91 (7th Cir. 2016).  On the face of applicable regulations, USCIS was required to provide notice of the revocation only "to the petitioner or self-petitioner," not the petition beneficiary.  8 C.F.R. § 205.2(b).[8]  And as in this case, USCIS's administrative appeal bar prevented the I-140 beneficiaries from seeking agency review or

---

rebut that evidence).  USCIS says the evidence accompanying the petition at the time of filing simply did not establish that Khedkar was a manager or executive with Deloitte.  J.A. 202.

[7] Even though the agency could have rejected the I-140 petition to begin with, it was not free to do whatever it wanted to the petition after it chose to send a request for evidence.  USCIS regulations promise that requests for evidence will "give the applicant or petitioner adequate notice and sufficient information to respond" along with a "deadline for response."  8 C.F.R. § 103.2(b)(8)(iv).  Those promises would be empty ones indeed if a petition's initial deficiencies allowed the agency to get away with improperly handling a request for evidence or the response.

[8] Because both cases involved USCIS revoking I-140 petitions after discovering that (coincidentally) the same petitioning employer had committed fraud, *Mantena*, 809 F.3d at 726; *Musunuru*, 831 F.3d at 885, the agency had a separate but similar obligation to notify "the applicant or petitioner" of the "derogatory information" it had considered in making its decision, *see* 8 C.F.R. § 103.2(b)(16)(i).  As explained above, that regulation does not apply here.  *See supra* note 6.  This difference between Khedkar's case and the revocation cases is not a meaningful one.  In each scenario, regulations required USCIS to provide a notice or request to the "applicant or petitioner" but not the petition beneficiary.

reconsideration.  *See Mantena*, 809 F.3d at 727; *Musunuru*, 831 F.3d at 890–91.  Undeterred, the beneficiaries asserted that, because they had ported to new employers, they or their new employers were entitled to the notice that regulations promised only to their original, petitioning employers.  *See Mantena*, 809 F.3d at 733; *Musunuru*, 831 F.3d at 889.

The Second and Seventh Circuits agreed with the beneficiaries, both courts drawing on the change the portability provision wrought in the relationship between petitioning employers and beneficiary employees.  Before the portability provision came along, an I-140 beneficiary was stuck with his petitioning employer for as long as he wanted to rely on the employer's petition during the I-485 application process for permanent residency.  *See Mantena*, 809 F.3d at 733.  Due to the limited number of available permanent residency visas, he could be trapped for years.  *See id.*; *see also Matter of V-S-G- Inc.*, 2017 WL 5625783, at *2.  Still, the beneficiary's forced relationship with his petitioning employer "also meant that notice to the original employer would adequately serve to inform the alien employee."  *See Mantena*, 809 F.3d at 733–34.

Congress enacted the portability provision to sever that forced relationship, the courts explained.  The provision thus provided job flexibility that would benefit employees and employers alike.  Immigrant employees could leave their jobs without jeopardizing a chance at permanent residency.  *See id.* (explaining that the portability provision promoted immigrant job flexibility as highlighted in the provision's title, "Job flexibility for long delayed applicants for adjustment of status to permanent residence"); *Musunuru*, 831 F.3d at 889 (agreeing with the immigrant plaintiff that he had "a vested interest" in his original employer's petition).  And employers could more easily hire talented foreign workers by relying on a prior employer's immigration filings instead of starting the whole process over from scratch.  *See Mantena*, 809 F.3d at 734 ("By virtue of the portability provisions, employers who hoped to attract foreign

national employees by sponsoring them to become permanent residents based on a permanent

job offer could avoid bureaucratic delay."); *Musunuru*, 831 F.3d at 889 (explaining that the

beneficiary's new employer "had a vested interest in the petition's validity" because it

"depended on" that original petition to employ the beneficiary).

But by severing the relationship between petitioning employers and beneficiaries, the

courts reasoned, the portability provision made it so that the immigrant "employees and the

successor employers who take advantage of earlier filings by other employers are frequently the

*only* parties with any interests in the originally filed . . . I-140 petitions." *See Mantena*, 809 F.3d

at 734; *see also Musunuru*, 831 F.3d at 889.   On the other hand, a petitioning employer is certain

to have a diminished interest in the outcome of an I-140 petition that benefited someone who no

longer works for it.  *See Mantena*, 809 F.3d at 734.  Yet USCIS regulations—which predate the

portability provision—continue to treat the indifferent prior employer as the only party to

revocation proceedings and the only one entitled to notice.  *See Mantena*, 809 F.3d at 734–35;

*Musunuru*, 831 F.3d at 889–91.  So as written, the outmoded regulations "plac[e] beneficiaries

and successor employers in a position of either blind faith in the original petitioner's goodwill

and due diligence or a forced and continued relationship with the now-disinterested and perhaps

antagonistic original petitioner."  *Mantena*, 809 F.3d at 735.  Such a result, the Second and

Seventh Circuits concluded, ran contrary to the portability regime enshrined in statute.  *See id.* at

734–35; *Musunuru*, 831 F.3d at 889–91.  To resolve the problem, they held that "the regulations

must be read to require notice to the real parties in interest."  *See Mantena*, 809 F.3d at 734; *see

also Musunuru*, 831 F.3d at 890.  USCIS has since agreed.  *Matter of V-S-G- Inc.*, 2017 WL

5625783, at *8.

The same logic applies here.  USCIS regulations specifically allow a would-be beneficiary awaiting approval for an I-140 petition to request to port to a new employer and thereby retain the benefit of that petition should it be approved.  8 C.F.R. § 245.25(a)(2)(ii)(B); Supplement J Instructions 2.  But as with notices of I-140 petition revocations, regulations also provide that the agency will send any requests for evidence it chooses to issue in evaluating a petition to "the applicant or petitioner"—not the beneficiary.  8 C.F.R. § 103.2(b)(8)(iv); *see also id.* §§ 103.2(a)(3); 103.3(a)(1)(iii)(B); 103.8(a)(1)(i).  So if USCIS reviews an I-140 petition for a beneficiary who has asked to port and decides to request more evidence, it will send the request to the employer that the beneficiary is leaving.  Like the Second and Seventh Circuits explained, the initial employer has little interest in responding when it knows the beneficiary is on his way out (or has already left).  *See Mantena*, 809 F.3d at 734–35; *Musunuru*, 831 F.3d at 889.  The result frustrates the purpose of the portability provision.  Regulations that USCIS admits do not account for the flexibility-promoting provision, *see Matter of V-S-G- Inc.*, 2017 WL 562783, at *4, 8, invariably lead to denied I-140 petitions for beneficiaries who try to move jobs—even though the agency is willing to hear more evidence on the matter.

Khedkar's case illustrates the point.  He followed USCIS regulations and sent the agency two Supplement J forms to let it know about his job changes.  J.A. 653–78.  After receiving the first form, USCIS decided to issue a request for evidence that would establish that Khedkar was and would continue to be an executive or manager.  J.A. 208–17.  Of course, the agency could have just denied the petition in the first place for lack of initial evidence.  But it did not.  It chose to ask for more evidence in accordance with regulations that demanded the request be sent to a party whose interest in the matter had evaporated, despite the agency having received notice that Khedkar had moved on.  When Deloitte (understandably) could not be bothered to respond,

USCIS denied the I-140 petition.  J.A. 206–07.  Meanwhile, Khedkar had done all that USCIS regulations required of him.  The result is not only at odds with the portability provision's aim of encouraging job flexibility—it is unfair too.

There is no reason that the I-140 petition review process for would-be beneficiaries who ask to port should be different from the petition revocation process that the Second and Seventh Circuits dealt with.  USCIS makes much of the fact that it never approved the petition at issue here when revocation proceedings necessarily involve a previously approved petition.  *See, e.g.*, Defs.' Reply at 8–9.  But it is unclear why that matters.  When the agency decides to request evidence in handling an I-140 petition approval, that process implicates regulations that require communication with only the petitioning employer just as a petition revocation does.  *Compare* 8 C.F.R. § 103.2(b)(8)(iv) ("A request for evidence . . . will be communicated by regular or electronic mail and will specify the type of evidence required . . . sufficient to give the applicant or petitioner adequate notice and sufficient information to respond."), *id.* § 103.2(a)(3) ("A beneficiary of a petition is not a recognized party in [a benefit request] proceeding."), *and id.* § 103.8(a)(1)(i) ("Routine service [of notices, decisions, and other papers] consists of mailing the notice . . . to the affected party . . . ."), *with id.* § 205.2 ("Revocation of the approval of a petition . . . will be made only on notice to the petitioner . . . ."), *and id.* § 103.2(b)(16)(i) ("If the decision will be adverse to the applicant or petitioner and is based on derogatory information . . . and of which the applicant or petitioner is unaware, he/she shall be advised of this fact . . . .").  And the regulation prohibiting I-140 beneficiaries from administratively appealing unfavorable decisions applies in both contexts.  *See id.* § 103.3(a)(1)(iii)(B).

USCIS suggests that the distinction matters because a plaintiff challenging a revocation has "relied upon his interest in his I-140 approval."  Defs.' Reply at 9.  It offers little more

explanation beyond that, so exactly how reliance factors into the calculus is anybody's guess. Regardless, the regulations that allow a would-be beneficiary to request to port even if he is still awaiting I-140 approval engender reliance too.  *See* 8 C.F.R. § 245.25(a)(2)(ii)(B); Supplement J Instructions 2.  Without those regulations, a beneficiary would be much less likely to change employers prior to I-140 petition approval out of fear that doing so could endanger the approval.

What matters is that USCIS regulations, as written, simply do not make sense in the regime the portability provision created.  They require the agency to continue to send requests for evidence to a petitioning employer even after the would-be beneficiary has decided to leave. And they do not allow anyone but the indifferent prior employer to appeal unfavorable decisions. The Court therefore holds that, when an I-140 petition is pending before USCIS and the agency receives notice that the beneficiary wants to move to a new employer, USCIS acts inconsistently with the portability provision if it continues to treat only the original employer as a party to the petition adjudication proceeding.  Put differently, the agency has acted arbitrarily by "fail[ing] to consider an important aspect of" the employment-based visa scheme, *see State Farm*, 463 U.S. at 43, and following a regulation that, insofar as it "operates to create a rule out of harmony with . . . statute, is a mere nullity," *see Manhattan Gen. Equip. Co.*, 297 U.S. at 134.  If USCIS chooses to send a request for evidence, it cannot send it solely to the original employer.  And if it denies the petition, it cannot deny access to its internal appeals apparatus to everyone but that employer.

So who should USCIS treat as a party to I-140 petition adjudication proceedings?  There is disagreement in the I-140 petition revocation context.  The Second Circuit did not provide an answer.  It merely stated that USCIS erred by providing notice to neither the beneficiary nor the successor employer.  *Mantena*, 809 F.3d at 736.  The court then remanded to the district court to

decide which of those parties was entitled to notice. *Id.*[9]  By contrast, the Seventh Circuit held

that the successor employer was the party entitled to notice because the successor employer had

taken up the previous employer's petition and was now "the de facto petitioner." *Musunuru*, 831

F.3d at 891.  USCIS disagrees with the Seventh Circuit.  It says that a beneficiary who ports to a

new employer should be able to participate in I-140 petition revocation proceedings because the

portability provision gives the beneficiary "a statutory interest in job flexibility." *Matter of V-S-*

*G- Inc.*, 2017 WL 5625783, at *8.  The agency also believes that the initial petitioning employer

deserves notice because regulations require it, the initial employer may sometimes retain an

interest in the proceedings, and the initial employer was the one who filed the petition. *Id.* at

*10.  But USCIS is adamant that a successor employer is not entitled to participate in an I-140

revocation proceeding because it "did not pay for the filing, is not responsible for maintaining

the petition, is not liable for the original petitioner's compliance or malfeasance associated with

it, and cannot withdraw the petition if it no longer requires the beneficiary's services." *Id.*

"Nor," the agency adds, "can the new employer prevent the beneficiary from porting to yet

another employer." *Id.*  USCIS lastly points out that, because porting allows the successor

employer to adopt the original I-140 petition rather than file its own, any deficiencies in the

"petition would relate to either the original petitioner or to the beneficiary" anyway. *Id.* at *11.

The Court will go only so far as to say that the I-140 beneficiary who attempts to port

should be a party to petition adjudication proceedings—at least when it comes to immigrants

applying for visas reserved for multinational executives and managers.  For an immigrant to earn

---

[9] As far as this Court can tell, the district court did not decide the question on remand but instead vacated the petition revocation and remanded to the agency. *See* Stipulation of Order and Dismissal, *Mantena v. Johnson*, 13-cv-5300 (S.D.N.Y. June 2, 2016), ECF No. 47.  The agency later sent a notice of intent to revoke to the beneficiary. *See Mantena v. Hazuda*, No. 17-cv-5142, 2018 WL 3745668, at *2 (S.D.N.Y. Aug. 7, 2018).

one of those visas, the I-140 petition must show that he was a manager or executive at his original employer for at least one of the three years before he immigrated and that he would have continued to be a manager or executive for the original employer in the United States.  8 U.S.C. § 1153(b)(1)(C); 8 C.F.R. § 204.5(j)(3)(i), (5).  Making that showing requires a demonstration that the immigrant managed components of the original employer, supervised subordinates at the original employer, and exercised discretion in decisionmaking for the original employer.  *See* 8 C.F.R. § 204.5(j)(2) (defining "[e]xecutive capacity" and "[m]anagerial capacity").  The new employer is not well-equipped to answer follow-up questions about the evidence the original employer submitted on those subjects.  *See Matter of V-S-G- Inc.*, 2017 WL 5625783, at *11. But the beneficiary who performed the job is.  He also has, as USCIS puts it, "a statutory interest in job flexibility."  *Id.* at *8.  Not to mention, he can always port to yet another new employer (as Khedkar did).  *Id.* at *10.  Accordingly, USCIS should have sent its request for evidence to Khedkar and permitted him to appeal.  Perhaps it should have afforded party status to Khedkar's successor employers too, but there is no need to decide that question here.

### B.  Khedkar's Unlawful Delay Claim

Khedkar next asserts that USCIS arbitrarily and capriciously delayed adjudicating his two Form I-485 Supplement J filings.  Compl. ¶¶ 93–109.  Remember, agency regulations require I-140 petition beneficiaries to file a Supplement J to request to port to a new employer.  *See* 8 C.F.R. § 245.25(a); Supplement J Instructions 1.

Khedkar's briefing on this claim is short and hard to follow.  *See* Pl.'s Mot. at 28–31. Much of his argument appears to overlap with his first claim (in fact, Khedkar's reply brief discusses the first two claims together—there is no separate section for his delay claim, *see generally* Pl.'s Reply at 3–18).  Essentially, Khedkar says that USCIS acted improperly when "it

failed to issue any request to [him] to address the merits of the underlying I-140 Petition" despite regulations that allow immigrants awaiting the approval of a petition to port. *See id.* at 28. The Court has already agreed that this argument and other similar ones establish that USCIS was wrong not to treat Khedkar as a party to its I-140 petition adjudication proceedings. It will not rehash the arguments in the context of a claim Khedkar characterizes as attacking the agency's excessive "delay" in making a decision on his Supplement J filings.

To the extent Khedkar independently challenges that delay, his claim is unfounded. As mentioned, the portability provision "preserves the validity of only those I-140 petitions that have been approved." *Ravulapalli*, 773 F. Supp. 2d at 53; *see also Matter of Al Wazzan*, 25 I. & N. Dec. at 367. So USCIS can ratify an immigrant's Supplement J request to port only after it has approved an I-140 petition that benefits him. Agency regulations thus require the agency to resolve an I-140 petition before evaluating the related portability request. *See* Supplement J Instructions 2; *see also* 8 C.F.R. § 245.25(a)(2)(ii); Employment-Based Immigrant Rule, 81 Fed. Reg. at 82,418. And once again, the fact that an immigrant's I-485 application has been pending for more than 180 days does not mean the underlying I-140 petition is necessarily valid. *See Matter of Al Wazzan*, 25 I. & N. Dec. at 364–67. The agency's "delay" in handling Khedkar's Supplement J filings was the result of appropriately putting the I-140 petition first.

Nowhere does Khedkar argue that USCIS unlawfully delayed adjudicating the I-140 petition—much less ground such an argument in law. He does not even cite any authority governing claims of unreasonable delay under the APA. *See* 5 U.S.C. § 706(1) (allowing a reviewing court to "compel agency action unlawfully withheld or unreasonably delayed"). All he does is complain that the Supplement J forms "remained pending for over 2 years," Pl.'s Mot. at 30, and cite a statute that provides: "It is the sense of Congress that the processing of an

immigration benefit application should be completed not later than 180 days after the initial

filing of the application . . . ."  8 U.S.C. § 1571(b).  But "sense of Congress" language like that in

section 1571(b) "is best interpreted as nonbinding."  *Palakuru v. Renaud*, --- F. Supp. 3d ----,

2021 WL 674162, at *4 (D.D.C. Feb. 22, 2021); *see also Emergency Coal. to Defend Educ.*

*Travel v. U.S. Dep't of the Treasury*, 545 F.3d 4, 14 n.6 (D.C. Cir. 2008) ("[A] sense of

Congress resolution is not law.").  And "[a]bsent a congressionally supplied yardstick," courts

have held that immigration "delays of about two years" are reasonable.  *See Sarlak v. Pompeo*,

No. 20-cv-35, 2020 WL 3082018, at *6 (D.D.C. June 10, 2020) (collecting cases).  The Court

stops there.  It is not obligated to do Khedkar's research and make arguments for him.  *See*

*Johnson v. Panetta*, 953 F. Supp. 2d 244, 250 (D.D.C. 2013) ("[P]erfunctory and undeveloped

arguments, and arguments that are unsupported by pertinent authority, are deemed waived.").

### C.  Khedkar's Fifth Amendment Procedural Due Process Claim

Lastly, Khedkar claims that USCIS's handling of the I-140 petition—from sending the

request for evidence to denying his appeal—violated his Fifth Amendment due process rights.

Compl. ¶¶ 110–15.  "A procedural due process violation occurs when an official deprives an

individual of a liberty or property interest without providing appropriate procedural protections."

*Atherton v. D.C. Off. of Mayor*, 567 F.3d 672, 689 (D.C. Cir. 2009).

Khedkar's papers leave even more to be desired with respect to his due process claim

than his unlawful delay claim.  His complaint states generally that USCIS's actions

"constitute[d] a deprivation of liberty" without explaining what liberty interest the agency

infringed.  Compl. ¶¶ 110–15.  And in his motion for summary judgment, Khedkar omits any

mention of his procedural due process claim entirely.  *See generally* Pl.'s Mot.  Only in his reply

brief does Khedkar finally come out and say that USCIS encroached on the liberty interest he has "in choosing the employment in which he wishes to engage."  *See* Pl.'s Reply at 19.

The Court will not entertain this tardy argument.  *See Gomez v. Trump*, 485 F. Supp. 3d 145, 188 (D.D.C. 2020) (declining to consider plaintiffs' arguments supporting a constitutional due process claim because they made the arguments for the first time in their reply brief).  To be sure, agency action implicates a constitutionally protected "right to follow a chosen trade or profession" if it inflicts on an individual "binding disqualification from work or broad preclusion from his or her chosen field" and not just "the loss of one position in the profession." *Abdelfattah v. U.S. Dep't of Homeland Sec.*, 787 F.3d 524, 538–39 (D.C. Cir. 2015) (cleaned up) (quoting *Kartseva v. Dep't of State*, 37 F.3d 1524, 1529 (D.C. Cir. 1994)).  But presented with incomplete briefing on whether the denial of a visa for Khedkar's benefit would amount to that kind of categorical bar and given "the doubts cast by many courts on the liberty and property interests implicated in an immigrant visa," the Court is loath to wade into the issue.  *See Mantena*, 809 F.3d at 736.  Not to mention, the Court has already required USCIS to treat Khedkar as a party to the I-140 petition adjudication process on statutory grounds.  There is thus little reason to address "this potentially problematic constitutional question."  *See id.*

## V.  CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment (ECF No. 15) is **GRANTED IN PART AND DENIED IN PART** and Defendants' motion for summary judgment (ECF No. 17) is **GRANTED IN PART AND DENIED IN PART**.  The Court vacates Defendants' denial of the I-140 petition that named Plaintiff as beneficiary and remands so that Defendants can provide Plaintiff an opportunity to respond to the request for evidence.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: August 5, 2021                                      RUDOLPH CONTRERAS
                                                          United States District Judge